COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| PAMELA RUST, | § | No. 08-10-00128-CV |
| Appellant, | § | Appeal from the |
| v. | § | 153rd District Court |
| TEXAS FARMERS INSURANCE COMPANY, | § | of Tarrant County, Texas |
| | § | |
| Appellee. | § | (TC# 153-236743-09) |
| | § | |

**O P I N I O N**

Appellant, Pamela Rust, brought suit seeking medical-payment benefits from Texas Farmers Insurance Company (Farmers) under two homeowner liability policies that it had issued to Frank Kurosky, her father. Rust now raises three issues on appeal wherein she complains that the trial court erred when it denied, in its entirety, her hybrid motion for summary judgment and instead, granted Farmers' competing summary-judgment motion. We affirm.

**BACKGROUND**

Kurosky owned two adjacent lots in Haltom City insured by Farmers under separate homeowner liability policies. Kurosky resided at the first property, located at 4325 Fossil (25-Fossil property), and was the sole named insured for that property. Kurosky rented the property next door, located at 4333 Fossil (33-Fossil rental property), to his daughter, and both Kurosky and Rust were named insureds on that policy.

According to Rust's affidavit, while she was operating a riding lawnmower at the 33-Fossil rental property, the lawnmower overturned on a steep, unfenced incline at the back of the property, causing her life-threatening injuries and resulting in medical bills in excess of $100,000. Rust's

affidavit alleged that Kurosky never properly instructed her on the safe operation of the lawnmower, and stated that she submitted more than $100,000 of medical bills to Farmers seeking a $5,000 payment under Kurosky's homeowner's policy. Rust commenced this suit after Farmers refused to pay Rust's claim.

*Procedure*

Rust's Petitions

In her original petition against Farmers, in addition to seeking to recover damages and other relief, Rust sought: (1) a declaratory judgment regarding the policies' medical-payment benefits and Farmers' alleged anticipatory breach of contract; and (2) to demonstrate Farmers' alleged Texas Insurance Code violations. Rust thereafter filed four amended petitions. Her first amended petition additionally asserted that she should not have been a named insured for the 33-Fossil rental property and sought reformation of the policy to exclude her as a named insured. In her second amended petition, Rust named Kurosky as a co-defendant, and sought damages for negligent entrustment of the riding lawnmower without proper instruction and for negligently failing to fence the back portion of the property where Rust fell. In her third amended petition, Rust added a breach-of-contract cause of action for Farmers' alleged failure or refusal to pay medical benefits as required by the policy provisions, and in her fourth amended petition, which was filed after Farmers had filed its motion for summary judgment, Rust added a cause of action by which she sought to have the trial court determine Farmers' duty to defend and indemnify Kurosky.

Rust's Hybrid Motion for Partial Summary Judgment

After filing her second amended petition, Rust filed a hybrid motion for partial summary judgment. In the no-evidence component of the motion, Rust alleged that Farmers failed to present

2

evidence of any facts that would exclude her claim from coverage "under the subject policy."[1]  In the traditional summary-judgment component of her motion, Rust contended that the 25-Fossil policy, wherein she is not a named insured, provided coverage for her loss occurring at the 33-Fossil rental property and that no valid exclusions applied to such coverage.

Farmers' Motion for Summary Judgment

Farmers filed its own summary-judgment motion and a response to Rust's summary-judgment motions.  In its own summary-judgment motion, Farmers contended that the policies at issue did not cover an insured person's own injuries, nor a resident's injuries but rather, only provided coverage for "someone else's injuries when an insured person is liable."  In sum, Farmers claimed that the policies at issue insured those persons who were named insureds on the policies *against* premises liability but did not serve to provide coverage for a named insured who suffered bodily injury upon the property identified in the policy's declarations.

33-Fossil Policy

Regarding the 33-Fossil rental property and the policy relating thereto, Farmers argued that while the policies provided property and liability coverage, they did not cover medical expenses incurred by a named insured or resident at the insured location nor did they cover medical expenses unless the insured person was liable for the bodily injury occurring at the insured location. Therefore, Farmers argued that Rust could not recover medical-payment benefits under the 33-Fossil policy because she was both a named insured and a resident of that insured property.

Reformation of 33-Fossil Policy

Regarding Rust's request to have the 33-Fossil policy reformed to remove her as a named

---

[1]  Rust fails to specifically identify which of the two policies she was referring to.

insured on that policy, Farmers argued that doing so would not entitle Rust to the payment of medical expenses because she admitted she was residing at the 33-Fossil rental property at the time of the accident and the policy for that location expressly excluded bodily-injury coverage for any resident of the residence premises. Farmers also alleged that Rust was not entitled to reformation because she failed, as required, to plead and prove that Farmers originally agreed to issue a policy without her name on it and that a mutual mistake occurred in adding her name to the policy.

25-Fossil Policy

Farmers asserted that although Rust could seek to recover as a third-party claimant under the 25-Fossil policy for which she was not a named insured nor was a resident at the insured location, she could not sue Farmers directly until she established Kurosky's liability and legal obligation to pay damages to her, a requirement that she had not yet satisfied. Moreover, Farmers contended that Rust was unable to satisfy the requirement because: (1) her injury had occurred at the 33-Fossil rental property rather than at the 25-Fossil property covered by the 25-Fossil policy; and (2) she had not yet pleaded any cause of action involving the adjacent 33-Fossil property under the 25-Fossil policy. Farmers argued that even upon pleading a cause of action against Kurosky based upon his ownership of the 33-Fossil rental, Rust would be unable to sue Farmers directly until she established Kurosky's liability.

Breach of Contract and Insurance Code Violations

In response to Rust's anticipatory breach-of-contract allegation, Farmers argued that Rust had failed to claim that it had repudiated its policy before the time for performance as required for such a claim but rather, had claimed that Farmers had delayed performance after she made her claim for medical-payment benefits. Because Farmers only insured Rust against property damage and third-

4

party claims, and because Rust suffered no property damage and no liability claim was made against her, Farmers argued there could be no breach of contract of any kind. Farmers also asserted that Rust lacked standing to sue Farmers directly for unfair insurance claim settlement practices. For these reasons, Farmers contended that it owed Rust nothing and was entitled to summary judgment on all of Rust's claims as a matter of law.[2]

Farmers' Response to Rust's Summary-Judgment Motion

In its response to Rust's hybrid summary-judgment motion, Farmers contended that a no-evidence partial summary judgment was improper because Rust, not Farmers, had the burden of proving that she was entitled to coverage under one of the policies and to accomplish this, Rust was required to first establish that Kurosky was liable for her injuries. Farmers also noted that a plaintiff cannot move for a no-evidence summary judgment on its own claim for which it has the burden of proof because to allow her to do so would allow her to prevail without ever proving the elements of her claim.

With regard to Rust's traditional summary-judgment contention, Farmers repeated its argument that Rust could not succeed under the 33-Fossil policy because she was an insured and a resident, and therefore, the policy coverage was inapplicable to Rust. Farmers likewise repeated its contention that Rust could not bring a direct action against it under the 25-Fossil policy because the Farmers' liability policies first required "a judgment that Mr. Kurosky [was] liable." To meet this requirement, Farmers argued that Rust carried the burden of proving causation of her injuries by

---

[2] Rust's additional causes of action for breach of contract and seeking a determination of Farmers' duty to defend and indemnify Kurosky were filed subsequent to Farmers' own summary-judgment motion. Therefore, Farmers' summary-judgment motion does not specifically address those additional issues as raised in Rust's third and fourth amended petitions.

showing that some condition at the 25-Fossil property caused her injuries next door at the 33-Fossil rental property or that Kurosky caused her injuries. Farmers noted that Rust admitted that the cause of her injuries was a steep incline at the back of the 33-Fossil property but presented no evidence that: (1) some condition on the 25-Fossil property caused her any injury; or (2) Kurosky's lack of instruction caused her injuries.

Farmers countered Rust's negligent entrustment claim by arguing that Rust failed to prove that Kurosky was liable as an alleged entrustor because she failed to show that Kurosky's alleged negligence was the proximate cause of her accident. In other words, by failing to show that Kurosky was reasonably able to anticipate that Rust's injury would result as a natural and probable consequence of the entrustment, Farmers alleged that Rust failed to prove causation. Moreover, Farmers objected to Rust's causation statements, characterizing them as conclusory because they failed to provide underlying facts to support her conclusions. Farmers specifically complained that Rust did not state that Kurosky's entrustment of the lawnmower was negligent or that it caused the accident, and asserted that any inference of the elements of negligent entrustment was both unproven and conclusory. Farmers also challenged Rust's assertion that the policy provisions pertaining to "that part of the insured location which is rented or available for rent" was applicable to her under the 25-Fossil property because Rust did not rent the 25-Fossil property but rented the 33-Fossil rental property where the accident occurred. For these reasons, Farmers claimed entitlement to summary judgment on all of Rust's claims as a matter of law.

Trial Court's Ruling

The trial court denied Rust's hybrid motion in its entirety, granted Farmers' summary-judgment motion, and noted in a letter to the parties that it believed Farmers' motion was sufficiently

6

broad to encompass Rust's fourth amended petition in which she additionally sought a determination of Farmers' duty to defend and indemnify Kurosky.

## DISCUSSION

### *Issues*

Rust raises three issues arising from the trial court's summary-judgment rulings. In Issue One, Rust generally complains that the trial court erred in ruling for Farmers on the competing summary-judgment motions and specifically complains that the trial court: (1) erred in denying her no-evidence motion for summary judgment by impliedly holding that there were facts which would exclude coverage for her loss; (2) "failed to liberally construe the pleadings and resolve all doubt in favor of coverage by impliedly finding that Farmers met its burden of proof as to any avoidance or affirmative defense;" (3) improperly applied the rules of contract construction when interpreting "the policy;" and (4) erred in denying her traditional summary judgment motion and impliedly holding that there was no coverage under "the homeowner's policy."[3] Rust also asks whether the Farmers policy requires that the insured's negligence be shown. In Issue Two, Rust contends that the trial court erred in granting Farmers' summary-judgment motion regarding Farmers' duty to indemnify Kurosky, a contention which Rust pleaded in her fourth amended petition after Farmers had already filed its summary-judgment and which Farmers did not otherwise directly address before the trial court entered its summary-judgment. In Issue Three, Rust alleges that the trial court erred in granting Farmers' motion for summary judgment because it impliedly held that there was no coverage for Kurosky's negligence.

### *Law*

_____
[3] Rust does not specify to which of the two policies she is referring.

<u>Third-Party Claimant Claims</u>

"A liability policy obligates an insurer to indemnify the insured against a covered loss arising from the insured's own legal liability." *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 775 (Tex. 2007). An insurer is only obligated in those suits which come within policy coverage and is entitled to rely upon the facts as alleged in the underlying petition in making a determination of that obligation. *Cigna Lloyds Ins. Co. v. Kamins*, 924 S.W.2d 206, 209 (Tex. App. – Eastland 1996, no pet.).

A party who is injured by an insured is considered a third-party beneficiary of a liability insurance policy. *State Farm County Mut. Ins. Co. of Texas v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989), *citing Great American Ins. Co. v. Murray*, 437 S.W.2d 264, 265 (Tex. 1969). A third-party claimant has no greater rights than an insured against an insurer. *Sparks v. Aetna Life & Cas. Co.*, 554 S.W.2d 228, 230 (Tex. Civ. App. – Dallas 1977, no writ). However, a third-party beneficiary cannot enforce a policy directly against the insurer until it has been established, by either judgment or agreement, that the insured has a legal obligation to pay damages to the injured third-party. *In re Allstate County Mut. Ins. Co.*, 227 S.W.3d 667, 669 (Tex. 2007), *citing Ollis*, 768 S.W.2d at 723; *Murray*, 437 S.W.2d at 265; *Jun v. Lloyds & Other Various Insurers*, 37 S.W.3d 59, 63 (Tex. App. – Austin 2000, pet. denied).

<u>Burden of Proof Regarding Policy Coverage and Exclusions</u>

In general, an insured bears the initial burden of showing that there is coverage under an insurance policy, and the insurer bears the burden of proving the applicability of an exclusion that permits it to deny coverage. *Venture Encoding Service, Inc. v. Atlantic Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App. – Fort Worth 2003, pet. denied). When an insurer proves the applicability of

an exclusion, the burden then shifts to the insured who must demonstrate that coverage exists under an exception to the exclusion. TEX. INS. CODE ANN. § 554.002 (West 2009) (providing that in a suit to recover under an insurance contract, the insurer bears the burden of proving any avoidance or affirmative defense that the Texas Rules of Civil Procedure require to be affirmatively pleaded); *Venture Encoding Service, Inc.*, 107 S.W.3d at 733; *Underwriters at Lloyd's of London v. Gilbert Texas Const. L.P.*, 245 S.W.3d 29, 33 (Tex. App. – Dallas 2007, pet. granted) (after insurer meets burden of showing applicability of policy exclusion, "the burden shifts back to the insured to show that an exception to the exclusion brings the claim within coverage"), *affirmed by Gilbert Texas Const. L.P. v. Underwriters at Lloyd's of London*, 327 S.W.3d 118 (Tex. 2010). Exclusionary language in the contract or an insurer's claimed exception to coverage constitutes an avoidance or an affirmative defense. TEX. INS. CODE ANN. § 554.002 (West 2009).

The Policies

Coverage

The two policies at issue are very similar and each utilized the following terms. "Insured location" means, in part, the "residence premises," which, in turn, means the dwelling and grounds at the address shown on the policy's declarations or renewal notice, and any part of a premises occasionally rented to an insured for other than business use. Consequently, the policies covered the dwelling and grounds at their respective locations. Moreover, "insured" means both the named insured and residents of the named insured's household who are his relatives. Under Section II (Liability Coverage), "occurrence" means an accident which occurs during the policy period and which results in bodily injury during the policy period.

Each policy contains a section setting forth liability coverage and liability exclusions.

9

Provisions for personal liability and medical payments to others are included within the liability coverage of the policies. Under the personal-liability provisions of the policies, Farmers states that it will pay those damages which an insured becomes legally obligated to pay because of bodily injury resulting from an occurrence or for personal injury to which the coverage applies. The personal-liability limits for the two policies differ in that the 25-Fossil policy provides up to $300,000 personal liability coverage per occurrence, whereas the 33-Fossil policy provides up to $500,000 personal liability coverage per occurrence. The medical-payments-to-others provision of the policies specifies that Farmers will pay reasonable medical expenses for necessary medical services furnished to a person to whom the coverage applies, and specifies that coverage thereunder applies, in part, to:

Persons on an insured location with permission of an insured; or

Persons off an insured location if the bodily injury is:
a. the result of a condition on the insured location or the ways immediately adjoining;
b. caused by the activities of the insured; or
c. caused by a residence employee in the course and scope of employment by an insured.

For those persons, the policies provide that Farmers will pay reasonable medical expenses for necessary medical services furnished for an occurrence causing bodily injury. The medical coverage policy limits are $1,000 per person under the 25-Fossil policy and $5,000 under the 33-Fossil policy.

Exclusions

There are three exclusions to coverage which are addressed by the parties. Both policies exclude from coverage bodily injury or personal injury to any insured or any resident of the residence premises. They also exclude coverage for an insured's bodily injury and personal injury arising from, during the course of, or in connection with the rental of any property or any part of any

10

premises by an insured. An exception within the policies provides in relevant part that this rental-property exclusion is not applicable to the rental of that part of an insured location which is rented either on an occasional basis for sole use as a residence or to no more than two roomers at the same time for sole use as a residence. Also included is an other-property exclusion for bodily or personal injury arising from, during the course of, or in connection with a location other than an insured location which is owned by an insured, rented to an insured, or rented to others by an insured.

*Standard of Review*

We review a trial court's summary judgment *de novo*. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009).[4] Our review is limited to consideration of the evidence presented to the trial court.[5] *Mathis v. Restoration Builders, Inc.*, 231 S.W.3d 47, 52 (Tex. App. – Houston [14th Dist.] 2007, no pet.). When both parties move for summary judgment, one of which is denied and the other granted, we consider all the summary judgment evidence and determine all issues presented. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). We must consider all grounds presented in both motions and render the judgment the trial court should have rendered. *Id.*

Hybrid Summary-Judgment Motion

When a party files a hybrid summary judgment motion on both no-evidence and traditional grounds, we first review the trial court's judgment under the no-evidence standard of review. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004); *All American Telephone, Inc. v. USLD*

---

[4] As this case was transferred from our sister court in Fort Worth, we decide it in accordance with the precedent of that court. TEX. R. APP. P. 41.3.

[5] Rust and Kurosky entered into an agreed final judgment after the trial court ruled on Rust's and Farmers' competing summary judgment motions.

11

*Communications, Inc.*, 291 S.W.3d 518, 526 (Tex. App. – Fort Worth 2009, pet. denied); *East Hill Marine, Inc. v. Rinker Boat Co.*, 229 S.W.3d 813, 816 (Tex. App. – Fort Worth 2007, pet. denied). If the non-movant failed to produce more than a scintilla of evidence under the standards of Rule 166a(i), then there is no need to analyze whether the movant's summary-judgment proof satisfied the less stringent burden set forth for traditional summary judgment under Rule 166a(c). TEX. R. CIV. P. 166a(c) & (d); *East Hill Marine, Inc.*, 229 S.W.3d at 816.

No Evidence Summary-Judgment Motion

A no-evidence motion for summary judgment under Rule 166a(i) is essentially a motion for a pretrial directed verdict. TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the non-movant's claim or defense. TEX. R. CIV. P. 166a(i); *All American Telephone, Inc.*, 291 S.W.3d at 526. The motion must specifically state the elements for which there is no evidence. TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc.*, 286 S.W.3d at 310; *All American Telephone, Inc.*, 291 S.W.3d at 526. The Supreme Court has explained that Texas Rule of Civil Procedure 166a(i) does not permit conclusory or general no-evidence challenges. *Timpte Industries, Inc.*, 286 S.W.3d at 310. This requirement serves the purposes of providing adequate information to the opposing party by which it may oppose the motion and defining the issues to be considered for summary judgment. *Timpte Industries, Inc.*, 286 S.W.3d at 311, *quoting Westchester Fire Ins. Co v. Alvarez*, 576 S.W.2d 771, 772 (Tex. 1978). The trial court is required to grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. TEX. R. CIV. P. 166a(i).

In conducting our no-evidence summary-judgment review, we will "review the evidence presented by the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Timpte Industries, Inc.*, 286 S.W.3d at 310, *quoting Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 582 (Tex. 2006). When a nonmovant presents more than a scintilla of probative evidence that raises a genuine issue of material fact, a no-evidence summary judgment is improper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009).

Traditional Summary-Judgment Motion

The party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). To determine if the non-movant raises a fact issue, we review the evidence in the light most favorable to the non-movant, crediting favorable evidence if reasonable jurors could do so, and disregarding contrary evidence unless reasonable jurors could not. *See Fielding*, 289 S.W.3d at 848, *citing City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)). A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. *Frost Nat. Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010).

*Application*

We consider Rust's first and third issues together. In Issue One, Rust asserts that the trial court erred by denying her hybrid summary judgment motion and granting Farmers' competing summary judgment motion. In Issue Three, Rust asserts that by granting Farmers' motion for

13

summary judgment, the trial court impliedly found that there was no coverage for Kurosky's negligence.

In the no-evidence component of her hybrid summary-judgment motion, Rust merely alleges, "that there is no evidence of any facts that would exclude Plaintiff's claim from coverage under the subject policy." Rust's no-evidence component of the summary judgment motion fails to specify the elements for which there is no evidence. TEX. R. CIV. P. 166a(i). Therefore, because she failed to specifically state the elements for which there is no evidence, the trial court did not err in denying Rust's no-evidence component of the hybrid summary-judgment motion. TEX. R. CIV. P. 166a(i); *Timpte Industries, Inc.*, 286 S.W.3d at 310-11. As to the traditional summary-judgment component of Rust's motion, Rust bore the burden of showing that no genuine issue of material fact exists and that she was entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). This she could not do because the issue of whether Kurosky was legally obligated to pay Rust for her injuries constituted a genuine issue of material fact. For these reasons, we find the trial court did not err in denying Rust's hybrid motion for summary judgment.

In its summary-judgment motion, Farmers showed that each of its policies expressly provided that medical-payments-to-others coverage did not apply to any insured or any regular resident of the insured location. Likewise, Farmers demonstrated that under the express exclusions of both policies, coverage for personal liability and medical payments to others did not apply to any insured or any resident of the resident premises. Thus, Farmers showed that Rust could not recover under the bodily injury provisions of the 33-Fossil policy because she was an insured, and could not recover under the medical-payments provisions of the 33-Fossil policy as she was both a named insured and a resident of the property.

14

Because Rust was neither a named insured nor a resident at the 25-Fossil property, the foregoing provisions did not bar her from attempting to recover under the 25-Fossil policy as a third-party claimant. However, the policy expressly and unambiguously stated that Farmers "will pay those damages which an insured becomes legally obligated to pay because of bodily injury or property damage resulting from an occurrence" to which that coverage applies.

Having reviewed the entirety of the record on appeal, we note that at the time the trial court considered the competing motions for summary judgment, Kurosky was not legally obligated to pay Rust for injuries resulting from "an occurrence" to which the policy applied because Rust had not obtained a judgment against Kurosky nor had Kurosky entered into an agreement establishing his legal obligation to pay damages to Rust. *In re Allstate County Mut. Ins. Co.*, 227 S.W.3d at 669; *Ollis*, 768 S.W.2d at 723; *Murray*, 437 S.W.2d at 265; *Lloyds & Other Various Insurers*, 37 S.W.3d at 63 (cases holding that a third-party claimant cannot enforce a policy directly against the insurer until it has been established, by either judgment or agreement, that the insured is legally obligated to pay damages to the injured third-party). The agreed final judgment between Rust and Kurosky was not entered until approximately two months after the trial court had granted Farmers' motion for summary judgment and had denied Rust's hybrid motion. Therefore, the agreed final judgment was not before the trial court at the time it ruled on the summary judgment motions. As we may only consider the evidence that was before the trial court, which did not include Rust and Kurosky's agreed final judgment, we cannot agree with Rust's contention that the trial court erred in denying her hybrid motion for summary judgment and granting summary judgment in favor of Farmers. *Mathis*, 231 S.W.3d at 47, 52. Ultimately, even if one or both of the policies provided coverage for Rust's injury, she could not have pursued recovery from Farmers under the medical-benefit

15

provisions of the policies because Farmers' insured, Kurosky, was not legally obligated to pay damages to Rust as an injured party at the time the trial court considered the competing summary-judgment motions. *In re Allstate County Mut. Ins. Co.*, 227 S.W.3d at 669; *Ollis*, 768 S.W.2d at 723; *Murray*, 437 S.W.2d at 265; *Lloyds & Other Various Insurers*, 37 S.W.3d at 63. Issues One and Three are overruled.

In her second issue, Rust notes that the trial court granted Farmers' summary judgment motion before Farmers responded to her amended pleading in which she, as a third-party claimant, sought a determination of Farmers' duty to defend and indemnify Kurosky, Farmers' insured, for any judgment entered. Rust admits that issues regarding indemnification of Kurosky were not ripe when the summary-judgment motions were before the court but asserts that this Court must now reverse and remand the indemnification issue as a result of the final agreed judgment that she and Kurosky subsequently executed. She contends that because Farmers' motion for summary judgment did not address Kurosky's indemnification, which she contends encompassed the issue of whether Farmers was barred from denying coverage under the policy, the trial court's order granting Farmers' summary-judgment motion is moot and she should be permitted to litigate Farmers' responsibility to pay Kurosky.

In its letter to the parties, issued on the same date as its orders on the competing summary-judgment motions, the trial court expressly stated that it believed Farmers' motion was "sufficiently broad to encompass the additional grounds asserted in [Rust's] Fourth Amended Petition." We agree with the trial court. A party who fails to amend or supplement his motion for summary judgment to address claims asserted in a plaintiff's amended pleading is generally not entitled to a summary judgment on the plaintiff's entire case, because the entry of such judgment would grant more relief

16

than requested. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001); *Blancett v. Lagniappe Ventures, Inc.*, 177 S.W.3d 584, 592 (Tex. App. – Houston [1st Dist.] 2005, no pet.). If the amended pleading raises a new theory of liability, a summary judgment cannot be granted as to those new theories. *Fraud-Tech, Inc. v. Choicepoint, Inc.,* 102 S.W.3d 366, 387 (Tex. App. – Fort Worth 2003, pet. denied). But when an amended petition essentially reiterates previously pleaded causes of action, an amended or supplemental motion for summary judgment is not always necessary. *See Rotating Services Industries, Inc. v. Harris*, 245 S.W.3d 476, 487 (Tex. App. – Houston [1st Dist.] 2007, pet. denied); *Choicepoint, Inc.,* 102 S.W.3d at 387. An amended or supplemental motion is not required when the grounds asserted in the motion for summary judgment conclusively negated a common element of the previously and newly pleaded claims, or when the motion is broad enough to encompass the newly asserted claims. *See Harris*, 245 S.W.3d at 487 (cataloguing cases).

Rust's fourth amended petition does not raise a new theory of liability but rather, seeks to have the trial court determine the insurer's duty to defend and indemnify the insured, against whom no judgment or agreement establishing the insured's legal obligation to the injured third-party, Rust, existed. Consequently, we find Farmers' motion broad enough to encompass Rust's newly-pleaded defense and indemnification issue. *See Harris*, 245 S.W.3d at 487. Finding that the trial court did not commit error, Issue Two is overruled.

## CONCLUSION

The trial court's judgments are affirmed.

GUADALUPE RIVERA, Justice

April 20, 2011
Before Chew, C.J., McClure, and Rivera, JJ.

17