

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-12-00320-CV

PIONEER LAND & CATTLE CO., APPELLANT

V.

LEANNE FARRELL COLLIER, APPELLEE

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2009-547,798, Honorable Don Emerson, Presiding

May 15, 2013

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

Pioneer Land & Cattle Co. appeals the trial court's granting of Leanne Farrell Collier's traditional and no-evidence motions for summary judgment that resulted in a final, take nothing summary judgment against all of Pioneer's claims. Pioneer presents eighteen issues by its appeal. We will affirm the judgment of the trial court.

## Background

Pioneer is a Texas corporation that was formed in 1992 to breed, raise, buy, and sell cattle and horses. Greg Collier has been the President of Pioneer since its formation. Greg is also the sole shareholder of Pioneer and Pioneer's only employee.

In 2005, Greg married Leanne. After a tempestuous marriage, Leanne filed for divorce in 2007. Pioneer was not named as a party to the divorce and did not seek to intervene. During the divorce proceedings, Greg contended that certain property, including all of the horses in his possession, was owned by Pioneer. See In re Marriage of Collier, No. 07-09-00146-CV, 2011 Tex.App. LEXIS 13, at *26 (Tex.App.—Amarillo Jan. 4, 2011, no pet.). However, Leanne's inventory and appraisement identified the horses as community property. See id. at *26-27. After hearing the evidence offered by each party regarding the character of this property, the trial court found that Greg had failed to overcome the community presumption to establish that this disputed property was owned by Pioneer. The final divorce decree reflected this characterization in its just and right division of the community estate. On review, we affirmed the trial court's characterization. See id. at *27. However, we reversed certain aspects of the trial court's divorce decree, but not its characterization of property, and remanded the case back to the trial court for consideration of those issues. See id. at *37-38.

On remand, Greg again attempted to challenge the trial court's characterizations of what property was community property. See In re Marriage of Collier, No. 07-12-00084-CV, 2012 Tex.App. LEXIS 7392, at *3-4 (Tex.App.—Amarillo Aug. 30, 2012, pet. filed) (mem. op.). However, the trial court found that the characterization issues were

2

affirmed by this Court and not remanded to the trial court for reconsideration. Id. at *4. On review, this Court affirmed the trial court's judgment on remand because the issues of characterization became the law of the case after this Court affirmed the sufficiency of the evidence supporting these characterizations in Collier I and Greg chose not to appeal our determination to the Texas Supreme Court. See id. at *10-11.

After the trial court notified the parties of its ruling in the divorce but before entry of the divorce decree, Pioneer sent Leanne a notice that it claimed ownership of four horses, a washer and dryer, and a saddle rack that the trial court had awarded to Leanne in the divorce. After the trial court signed the divorce decree awarding Leanne the property to which Pioneer claimed ownership, Pioneer filed the instant suit asserting claims of conversion, breach of contract, quantum meruit, interference with business relations, and attorney's fees. Subsequently, Pioneer amended its pleading to include a request for declaratory judgment. Leanne filed a traditional and no-evidence motion for summary judgment, which the trial court granted on June 15, 2012. The trial court's entry of summary judgment disposed of all of Pioneer's claims. Pioneer appealed the trial court's summary judgment.

Pioneer presents 18 issues by its appeal. Its first ten issues challenge the trial court's no-evidence summary judgment rulings. Specifically, issues one through four challenge summary judgment on Pioneer's declaratory judgment action, its fifth issue challenges summary judgment on its conversion claims, its sixth issue challenges summary judgment on its breach of contract claim, its seventh issue challenges summary judgment on its quantum meruit claim, its eighth and ninth issues challenge summary judgment on its interference with business relations claims, and its tenth issue

3

challenges summary judgment on its attorney's fees claim. Pioneer's last eight issues challenge the trial court's traditional summary judgment rulings. Specifically, its eleventh issue challenges summary judgment based on Leanne's defense of collateral estoppel, its twelfth issue challenges summary judgment on Leanne's statute of frauds defense, its thirteenth and sixteenth issues challenge summary judgment on Leanne's limitations defense, its fourteenth and seventeenth issues challenge summary judgment on Leanne's impossibility defense, and its fifteenth and eighteenth issues challenge summary judgment on Leanne's justification defense.

## Standards of Review

Appellate courts review a trial court's summary judgment *de novo*. Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848 (Tex. 2009). We review the evidence presented in the motion and response in the light most favorable to the party against whom the summary judgment was rendered, crediting evidence favorable to that party if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not. Id. (citing City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005), and Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193, 208 (Tex. 2002)). When, as here, a party moves for both traditional and no-evidence summary judgment, we first review the trial court's judgment under the standards of Rule 166a(i), because if the nonmovant failed to meet the no-evidence standard, there is no need to analyze whether the movant's summary judgment proof satisfied the less stringent burden under Rule 166a(c). See Ford Motor Co. v. Ridgway, 135 S.W.3d 598, 600 (Tex. 2004).

4

A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. See TEX. R. CIV. P. 166a(i); Timpte Indus., Inc. v. Gish, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on the ground that there is no evidence to support one or more essential elements of the non-movant's claim or defense. TEX. R. CIV. P. 166a(i); Rust v. Tex. Farmers Ins. Co., 341 S.W.3d 541, 550 (Tex.App.—El Paso 2011, pet. denied). The motion must specifically identify the element(s) for which there is no evidence because Rule 166a(i) does not permit conclusory or general no-evidence challenges. TEX. R. CIV. P. 166a(i); Timpte Indus., Inc., 286 S.W.3d at 310. If the motion is sufficiently specific, the trial court is required to grant the motion if the nonmovant fails to produce summary judgment evidence that raises a genuine issue of material fact on the challenged element(s). See TEX. R. CIV. P. 166a(i); Rust, 341 S.W.3d at 550. However, when the nonmovant presents more than a scintilla of probative evidence to raise a genuine issue of material fact, a no-evidence summary judgment is improper. Rust, 341 S.W.3d at 550 (citing Smith v. O'Donnell, 288 S.W.3d 417, 424 (Tex. 2009)).

A party moving for traditional summary judgment bears the burden of showing that no genuine issue of material fact exists, and that he is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); Rust, 341 S.W.3d at 550. A defendant who conclusively negates a single essential element of a cause of action or conclusively establishes an affirmative defense is entitled to summary judgment on that claim. Frost Nat'l Bank v. Fernandez, 315 S.W.3d 494, 508 (Tex. 2010).

5

Declaratory Judgment (Issues One through Four)

By its First Amended Petition, Pioneer seeks a declaration that the horses listed in Exhibit A[1] of its petition are owned by Pioneer.[2] By her motion for summary judgment, Leanne contends that Pioneer can produce no evidence that it owned four of the horses[3] that had been awarded to Leanne by the divorce decree. Pioneer appended the affidavit of Greg, in his capacity as Pioneer's President and custodian of Pioneer's business records, to its response, in which Greg attests, *inter alia*, that "Pioneer purchased, in its name and with its funds, . . . [t]he registered Quarter Horses known as Sea . . ., SI Ripcord . . ., VLW Imadriftertoo . . . ." The affidavit makes no mention of Ciderwood Whiskey. Also attached to Pioneer's response are three documents entitled Horse Ownership Summary that reflect that Pioneer is the current owner of Ciderwood Whiskey, Sea, and VLW Imadriftertoo, a copy of a $4,000 check from Pioneer to Ace Holtzman with "Rip" written on the memo line, and certified business records from the American Quarter Horse Association (AQHA) that reflect that

---

[1] Exhibit A is a four-page list of horses that are business records of the American Quarter Horse Association reflecting that Pioneer owned each of the listed horses at some time.

[2] While not raised by Leanne, we note that Greg would seemingly be a necessary party to Pioneer's declaratory judgment action since the same divorce decree upon which Leanne obtained a claim of ownership in some of the horses awarded "[a]ll of the horses in his possession . . ., except as otherwise awarded to wife herein" to Greg. See TEX. CIV. PRAC. & REM. CODE ANN. § 37.006(a) (West 2008) ("When declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties.").

[3] Leanne's no-evidence challenge relates only to the following horses: Ciderwood Whiskey, Sea, SI Ripcord, and VLW Imadriftertoo. These four horses were awarded to Leanne by the divorce decree. Leanne makes no claim of ownership or challenge of Pioneer's ownership of any other horse identified on Pioneer's Exhibit A.

Ciderwood Whiskey, Sea, and VLW Imadriftertoo had been owned by Pioneer but had been sold on February 10, 2009.

In looking at this evidence in the light most favorable to Pioneer, Greg's affidavit indicates that Pioneer purchased Sea, SI Ripcord, and VLW Imadriftertoo, and that Pioneer never sold or transferred these horses. Greg goes on to explain that the indication that the reference in the AQHA's records to the horses having been sold was "due to a transfer of ownership which was precipitated by [Leanne] transferring registration of the horses into her name, using the divorce decree . . . ." While Greg's affidavit appears to present some evidence of Pioneer's ownership of three of the horses, it does not raise a fact issue because it is conclusory, see Rizkallah v. Conner, 952 S.W.2d 580, 587 (Tex.App.—Houston [1st Dist.] 1997, no pet.) (affidavit that states only legal or factual conclusions is not proper summary judgment evidence), inconsistent, Trico Techs. Corp. v. Montiel, 949 S.W.2d 308, 310 (Tex. 1997) (per curiam) (a self-serving affidavit from an interested party is summary judgment evidence only if, *inter alia*, it is free from inconsistencies), and In re Marriage of Collier, 2011 Tex.App. LEXIS 13, at *27 (the horses currently in dispute found by trial court to have been given to Leanne by Greg, and no specific challenge of this finding raised by Greg on appeal), and fails to provide the underlying facts to support its conclusion, see Rizkallah, 952 S.W.2d at 587 (conclusory statements without factual support are not proper summary judgment evidence because they are not credible or susceptible to being readily controverted). The only identification of the source of the three Horse Ownership Summaries in the summary judgment record is a statement by Greg in his affidavit that the documents attached to his affidavit are Pioneer's business records.

However, included within these "business records" are bills from the Home Depot, statements of accounts from FirstCare Health Plans, checks from Hodge Niederer & Cariani LLC, and a service agreement with Ingenux Inc. Clearly, none of these documents are business records generated by Pioneer in the regular course of its business. Finally, indulging all reasonable inferences in favor of Pioneer, the AQHA records present some evidence that Pioneer owned the three horses included in those records at some time. However, the AQHA records specifically indicate that the three horses covered by these records were sold on February 10, 2009. Thus, for us to accept the AQHA records as summary judgment evidence of ownership of the horses, we must also accept that the AQHA determined that there was sufficient evidence of a transfer of ownership presented to it on February 10, 2009, to cause it to change its records.[4] Thus, the AQHA records present no evidence of Pioneer's current ownership of the horses.

As such, after reviewing all of the evidence regarding ownership of the four horses addressed by the trial court's summary judgment, we conclude that the trial court did not err in finding that Pioneer failed to present any evidence of its ownership of these horses. Consequently, we conclude that the trial court did not err in granting Leanne's no-evidence summary judgment, and overrule Pioneer's first four issues.

---

[4] Also, of note, Greg's affidavit provides that Pioneer was "unable to successfully transfer Registration of [SI Ripcord] to Pioneer" in a manner that would be reflected in the AQHA records.

## Conversion (Issue Five)

Pioneer contends that Leanne converted a dog, washer and dryer units, three custom saddle racks, the four horses addressed in the preceding section, registration records for those four horses, breeding records relating to Pioneer's horse breeding business, and three internet domain names. Leanne filed a no-evidence motion for summary judgment contending that Pioneer could present no evidence that it owned, had possession of, or was entitled to possession of any of this property. In addition, Leanne contended that Pioneer could present no evidence that Leanne wrongfully exercised dominion or control over any property belonging to Pioneer.

For Pioneer to prove that Leanne converted its property, it must show: (1) Pioneer owned, had legal possession of, or was entitled to possession of the property; (2) Leanne assumed and exercised dominion and control over the property in an unlawful and unauthorized manner, to the exclusion of and inconsistent with Pioneer's rights; and (3) Leanne refused Pioneer's demand for return of the property. See Hunt v. Baldwin, 68 S.W.3d 117, 131 (Tex.App.—Houston [14th Dist.] 2001, no pet.).

As addressed in the preceding section, the trial court did not err in determining that Pioneer presented no evidence that it owned the four horses in dispute. Furthermore, Pioneer's conversion claim, as pled, relies solely on ownership of the horses rather than legal possession or entitlement to possess the horses. Because we have already determined that the trial court did not err in granting summary judgment on the basis that Pioneer presented no evidence of its ownership of the disputed horses,

we likewise conclude that the trial court did not err in granting Leanne's no-evidence summary judgment motion as to Pioneer's claims of conversion of the four horses.

As to the domain names, the only evidence addressing ownership is Greg's affidavit. Greg's affidavit attests that Leanne obtained the domain names that were used by Pioneer up to the point that Leanne closed those accounts. Greg does not indicate that these domain names were given to Pioneer by Leanne. In fact, the only indication that these domain names were given to Pioneer comes in Pioneer's response to Leanne's motion for summary judgment. A response to a motion for summary judgment is a pleading and may not itself be considered summary judgment evidence. Wol+Med Sw. Dallas L.P. v. Dallas Cent. Appraisal Dist., No. 05-12-00011-CV, 2013 Tex.App. LEXIS 1969, at *3 (Tex.App.—Dallas Feb. 27, 2013, no pet. h.) (mem. op.) (citing Liggett v. Blocher, 849 S.W.2d 846, 852 (Tex.App.—Houston [1st Dist.] 1993, no writ)). Thus, Pioneer has presented no evidence that it had any ownership interest in the domain names. Consequently, the trial court did not err in granting Leanne's no-evidence summary judgment motion as to Pioneer's claims of conversion of the domain names.

As to the remaining items of property identified by Pioneer as having been converted by Leanne, the only evidence of Pioneer's ownership cited by Pioneer is Greg's affidavit which attests that these items were purchased by Pioneer and were never sold or transferred. Again, while Greg's affidavit appears to present some evidence of Pioneer's ownership of this property, it does not raise a fact issue because it is conclusory and fails to identify the underlying facts in support of its conclusions. See Rizkallah, 952 S.W.2d at 587. Greg's affidavit literally does no more than claim

10

that Pioneer bought these items, and did not sell or transfer them. In addition, Leanne presented evidence that, during the divorce proceedings, Greg claimed ownership of the dog as his separate property. See Trico Techs. Corp., 949 S.W.2d at 310 (a self-serving affidavit from an interested party is summary judgment evidence only if, *inter alia*, it is free from inconsistencies). Further, the only evidence Pioneer presented regarding possession of these additional items of property is an affidavit from Greg that states that the saddle racks and washer and dryer were last in the possession of Leanne. However, Greg fails to provide any underlying facts to support his conclusory assertion that Leanne possesses this property, such as when this property was last known to be in Leanne's possession. See Rizkallah, 952 S.W.2d at 587. As to the registration and breeding records, the only evidence of Leanne's possession of these documents is Greg's statement that these documents were kept at a location to which only he and Leanne had a key, and that he was unable to locate these documents when he went to that location. These records are never specifically identified. Consequently, it is impossible for this Court to assess the specific records that are being sought, which, consequently, prevents a determination of ownership of said documents and an assessment of potential wrongful possession.

For the foregoing reasons, after reviewing all of the evidence regarding ownership of the dog, washer and dryer units, three custom saddle racks, four horses, registration records, breeding records, and three internet domain names, we conclude that the trial court did not err in concluding that Pioneer failed to present evidence of its ownership of this property and/or Leanne's unlawful and unauthorized possession of

11

this property.  Consequently, we conclude that the trial court did not err in granting Leanne's no-evidence summary judgment, and overrule Pioneer's fifth issue.

## Breach of Contract (Issue Six)

Pioneer contends that Leanne breached a contract with Pioneer under which Pioneer purchased and installed windows in a residence owned by Leanne.  Leanne filed a no-evidence motion for summary judgment contending that Pioneer could present no evidence that a contract existed between Pioneer and Leanne regarding the purchase and installation of windows in the residence.

The elements of a breach-of-contract claim are: (1) the existence of a valid contract between the plaintiff and defendant; (2) the plaintiff's performance or tender of performance; (3) the defendant's breach of the contract; and (4) the plaintiff's damage as a result of that breach.  Esty v. Beal Bank S.S.B., 298 S.W.3d 280, 299 (Tex.App.— Dallas 2009, no pet.); Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C., 51 S.W.3d 345, 351 (Tex.App.—Houston [1st Dist.] 2001, no pet.); Aquila Sw. Pipeline, Inc. v. Harmony Exploration, Inc., 48 S.W.3d 225, 235 (Tex.App.—San Antonio 2001, pet. denied).

To establish the existence of a contract between Pioneer and Leanne, Pioneer produced Greg's affidavit, in which he states that Leanne entered into a contract with Pioneer for the purchase and installation of custom-fit windows for the residence, and credit card statements from the Home Depot that could be read to show a balance due for the purchase of windows.  However, as above, Greg's affidavit is conclusory and fails to provide any underlying facts to support his assertion.  See Rizkallah, 952 S.W.2d at 587.  Notably, while the Home Depot statements might be considered evidence of the

second element of a breach of contract claim, Greg's affidavit is the only evidence of the first, third, and fourth elements. As such, we conclude that the trial court did not err in granting Leanne's no-evidence summary judgment as to Pioneer's breach of contract claims. Consequently, we overrule Pioneer's sixth issue.

## Quantum Meruit (Issue Seven)

Pioneer contends that it provided health insurance for Leanne for the months of November and December of 2008, for which Leanne was to reimburse Pioneer. As such, Pioneer claims that it is entitled to quantum meruit damages. Leanne's no-evidence motion for summary judgment contended that Pioneer could present no evidence that it paid the premiums for health insurance for the months of November and December of 2008.

To recover under the doctrine of quantum meruit, Pioneer must establish that: 1) it provided valuable services and/or materials, 2) to Leanne, 3) which were accepted by Leanne, and 4) under such circumstances as reasonably notified Leanne that Pioneer, in performing, expected to be paid by Leanne. See Heldenfels Bros., Inc. v. City of Corpus Christi, 832 S.W.2d 39, 41 (Tex. 1992).

As evidence that it paid the premiums for Leanne's health insurance for the months of November and December of 2008, Pioneer cites Greg's affidavit, Pioneer's financial records, and a statement from FirstCare. Greg's affidavit provides that Leanne failed to pay Pioneer for health insurance "sometime between November[] 2008[,] and March[] 2009," resulting in a liability to Pioneer of approximately $3,021.58. Because she did not notify Pioneer that she was cancelling the insurance, Greg attests that

13

"Pioneer provided insurance to [Leanne] at a cost of at least $1,656.29."  Notably, Greg's affidavit does not identify that Pioneer provided health insurance for Leanne for the months of November and December of 2008.  Rather, at best, Greg's affidavit provides that Pioneer provided Leanne health insurance "sometime between November[] 2008[,] and March[] 2009."  Thus, Greg's affidavit is not evidence that supports Pioneer's quantum meruit claims.  Pioneer's financial records indicate, at best, that Pioneer made four $500 payments and one $3,021.58 payment for "insurance" between November 2008 and March 2009.  As for November and December of 2008, this record reflects only two $500 payments, and one of these payments was noted to have been made "per court order."  The FirstCare statement is a December 16, 2008 invoice that is a bill for coverage for January 2009.  It indicates that the invoice is in reference to two contracts and three members, but does not identify Leanne in any way.  Consequently, we conclude that Pioneer presented no evidence that it paid premiums for Leanne's health insurance for the months of November and December of 2008, and, therefore, the trial court did not err in granting Leanne's no-evidence summary judgment as to Pioneer's claims for quantum meruit.  We overrule Pioneer's seventh issue.

Interference with Business Relations (Issues Eight and Nine)

By its eighth issue, Pioneer contends that Leanne interfered with a business relationship existing between Pioneer and Hodge Nieder Cariani Lindsay (hereinafter, "Hodge").  Specifically, Pioneer contends that Leanne was an employee of Pioneer that was performing work relating to a service contract between Pioneer and Hodge until Leanne interfered with this relationship by cancelling the contract soon after she filed for

divorce from Greg. In her no-evidence motion for summary judgment, Leanne contends that Pioneer could present no evidence of a valid contract between Pioneer and Hodge.

By its ninth issue, Pioneer contends that Leanne interfered with Pioneer's business relations when she cancelled three domain names that Pioneer was developing for use in its business. In her no-evidence motion for summary judgment, Leanne contends that Pioneer could present no evidence that it owned or had a valid, contractual right to use the domain names.

To establish its tortious interference with business relations claims, Pioneer must show: (1) the existence of a valid contract, (2) Leanne's willful and intentional interference with that contract, (3) the interference proximately caused Pioneer damage; and (4) Pioneer suffered actual damage or loss. See Butnaru v. Ford Motor Co., 84 S.W.3d 198, 207 (Tex. 2002).

In her no-evidence motion, Leanne challenges whether Pioneer can produce any evidence of a contract to support either of its interference claims. As evidence of a contract between Pioneer and Hodge, Pioneer points to Greg's affidavit, which conclusorily makes passing reference to a services contract between Pioneer and Hodge but wholly fails to provide any underlying facts in support of the existence of such a contract, see Rizkallah, 952 S.W.2d at 587, and a series of checks and invoices purportedly exchanged between Pioneer and Hodge, which, at best, evidence that Pioneer provided some "executive search consulting" services to Hodge. However, this evidence does no more than create a surmise or suspicion of the existence of a services contract between Pioneer and Hodge. See Kindred v. Con/Chem, Inc., 650

15

S.W.2d 61, 63 (Tex. 1983). However, even if this evidence did raise a fact issue regarding the existence of a service contract, there is no evidence that Pioneer suffered damage that was proximately caused by Leanne's interference with said contract.

As evidence of a contract regarding the domain names, Pioneer essentially reiterates its claim that Leanne gave the domain names to Pioneer. However, as addressed above in review of Pioneer's claims for conversion, Pioneer failed to provide evidence of such a gift. Specifically in reference to its interference with business relations claim though, Pioneer makes reference to a contract between itself and Ingenux, Inc. A service agreement between Pioneer and Ingenux is included in the summary judgment evidence. However, nothing in this service agreement makes any reference to any of the domain names subject to Pioneer's claims of interference. Also, Greg makes no reference to Ingenux or a contract with Ingenux in his affidavit. Therefore, we conclude that the trial court did not err in determining that there was no evidence of a contract with respect to the domain names.

As such, we conclude that the trial court did not err in determining that Pioneer presented no evidence of the existence of a valid contract to support either of its claims for tortious interference with business relations. We overrule Pioneer's eighth and ninth issues.

## Attorney's Fees (Issue Ten)

Pioneer next contends that it is entitled to an award of attorney's fees. Leanne, in her motion for no-evidence summary judgment, contends that Pioneer could establish no legal basis for its recovery of attorney's fees. Pioneer's claim for recovery of

attorney's fees under its breach of contract claims require that it be a "prevailing party." See TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008); De Los Santos v. Mejia, No. 05-10-01662-CV, 2012 Tex. App. LEXIS 9170, at *13 (Tex.App.—Dallas Nov. 6, 2012, no pet.) (mem. op.) (a prevailing party may recover attorney's fees in a breach of contract action). While it is not necessary that Pioneer be the prevailing party to recover attorney's fees under its declaratory judgment claims, see TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (West 2008); Garcia v. Comm'rs Court of Cameron Cnty., 101 S.W.3d 778, 784 (Tex.App.—Corpus Christi 2003, no pet.) (in declaratory judgment action, trial court may award reasonable and necessary attorney's fees as are equitable and just), it does not contend on appeal that the trial court's denial of Pioneer's claim for attorney's fees was not equitable and just or an abuse of discretion. Consequently, we affirm the trial court's no-evidence summary judgment on Pioneer's claim for attorney's fees, and overrule Pioneer's tenth issue.

Traditional Summary Judgment Issues (Issues Eleven through Eighteen)

Because we have concluded that the trial court did not err in granting Leanne's no-evidence motion for summary judgment as to each of Pioneer's claims, we need not address Pioneer's challenges to the trial court's rulings on Leanne's traditional summary judgment grounds. See Ford Motor Co., 135 S.W.3d at 600.

Leanne's Motion for Damages for Frivolous Appeal

Leanne filed a motion for damages with this Court on the basis that Pioneer's appeal is frivolous. After considering the arguments presented by Pioneer and the state

17

of the appellate record, we conclude that the appeal, while unsuccessful, was not frivolous.  As such, we deny Leanne's motion.  <u>See</u> Tᴇx. R. Aᴘᴘ. P. 45.

## Conclusion

After reviewing all the evidence in the light most favorable to Pioneer, we conclude that the trial court did not err in granting Leanne's motion for no-evidence summary judgment as to all of Pioneer's claims.  As such, we affirm the trial court's summary judgment.


Mackey K. Hancock
Justice


Pirtle, J., Concurring.